**Opinion filed April 6, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00290-CV

_____

## IN THE INTEREST OF A.O., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 10371-CX**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order terminating the parental rights of A.O.'s mother and father. A.O.'s father appealed. On appeal, he presents three issues in which he challenges the sufficiency of the evidence to support the trial court's findings. We reverse and remand.

I. *Termination Findings and Sufficiency Standards*

After considering the evidence presented at trial, the trial court terminated the parental rights of both of A.O.'s parents based upon the findings that the trial court made pursuant to Section 161.001(b) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b) (West 2022). The trial court found that Appellant had

committed two of the acts listed in Section 161.001(b)(1)—those found in subsections (D) and (O). Specifically, the trial court found that Appellant had (1) knowingly placed or knowingly allowed A.O. to remain in conditions or surroundings that endangered A.O.'s physical or emotional well-being and (2) failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of A.O. *See id.* § 161.001(b)(1)(D), (O). The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in A.O.'s best interest.

To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. FAM. § 161.001(b). In three issues on appeal, Appellant challenges the findings made by the trial court pursuant to Section 161.001(b)(1), as well as the trial court's best interest finding. He asserts that the evidence is legally and factually insufficient to support those findings.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). In this regard, we note that the trial court is the sole arbiter of the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

2

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

## II. *Evidence Presented at Trial*

Three witnesses testified at the termination hearing: a permanency case manager, Appellant, and A.O.'s friend's mother. According to the case manager and Appellant, A.O. went to live with Appellant sometime after an intake regarding A.O.'s mother, with whom A.O. had been living. The intake involved an allegation of sexual abuse of A.O. by a sibling and methamphetamine use by A.O.'s mother. A.O. was eleven years old at the time. Before the Department allowed A.O. to be placed with Appellant, the Department required Appellant to pass a drug test, which he did. Additionally, the Department conducted a walk-through and approved Appellant's then-home.

Unfortunately, less than one month after he became A.O.'s primary caretaker, Appellant was arrested for driving while intoxicated with a child passenger—A.O.

3

A.O. was removed from her parents' care after Appellant was arrested. A.O.'s mother was incarcerated at that time.

Appellant's DWI offense was charged as a felony because a child was in the vehicle. Appellant pled guilty to the felony DWI and was placed on probation. Appellant testified that, at the time of the termination hearing, he was in compliance with all of the terms and conditions of his probation, and there is nothing in the record before us to indicate otherwise. The Department did not present any evidence as to the circumstances surrounding the DWI (other than that A.O. was a passenger), nor did it present any evidence as to whether Appellant had any previous DWI convictions or other criminal history. Appellant acknowledged that alcohol was his "vice," and he testified that he got arrested for the DWI after being pulled over for speeding—driving "45 in a 35." Appellant said that he had not had a drink since the date of his arrest for DWI, which was one and one-half years prior to the termination hearing. While this case was pending below, Appellant did not test positive for drugs. He obtained and maintained stable employment, earning minimum wage. Appellant, however, failed to obtain stable housing. Appellant also failed to strictly comply with other provisions of his family service plan, which had been made an order of the court. The record indicates that there was some confusion between Appellant and the Department regarding the requirements and, perhaps, some failures on the part of the Department's case managers that may have been a reason for some, but not all, of Appellant's noncompliance.

Appellant continued to visit and to maintain a relationship with A.O. while this case was pending below. By all accounts, their relationship was loving and appropriate, and they had a special bond. For almost the entirety of the case, A.O. wished to be returned to her father's care. However, at the time of trial, A.O. expressed a desire to be adopted by her friend's parents, even though she loved Appellant "very much" and wanted to maintain a relationship with him.

4

A.O. initially had trouble adjusting to foster care; it was "very emotionally difficult for her." A.O. did not do well in her first foster home and was later placed in a different foster home, where she had been for about one year at the time of trial and was "doing great." A.O. attended counseling weekly and was on medication prescribed by a psychiatrist. While in the latter foster home, A.O. was involved in various extracurricular activities and made a friend with whom she spent a lot of time. A.O. not only spent time at the friend's house, she regularly went to church with the friend and her family, and she also went on vacation with them. The friend's parents had previously adopted other children and, at the time of trial, were in the process of becoming a licensed foster home again so that A.O. could be placed with them. The Department's plans were for A.O. to eventually be adopted by her friend's parents.

### III. *Analysis*

As we stated above, the termination of one's parental rights must be supported by clear and convincing evidence. FAM. § 161.001(b). We carefully scrutinize termination proceedings, and we strictly construe involuntary termination statutes in the parent's favor. *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012).

#### A. *The evidence is legally sufficient to support the findings under (D) and (O).*

In his first and second issues on appeal, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's findings under Section 161.001(b)(1)(D) and (O). Because of our holding with respect to Appellant's third issue, we need address only the legal sufficiency challenge to the trial court's findings under Section 161.001(b)(1), which could potentially result in a rendition rather than a remand. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *see also* TEX. R. APP. P. 47.1.

With respect to subsection (D), the record shows that Appellant knowingly placed A.O. in, or allowed her to remain in, conditions or surroundings that

endangered A.O.'s physical or emotional well-being when he caused her to be a passenger in a vehicle, that was being driven by Appellant while he was intoxicated. Under subsection (D), the focus is on the child's environment. *In re J.W.*, 645 S.W.3d 726, 749 (Tex. 2022). "The suitability of a child's living conditions and the conduct of parents or others in the home are relevant to a Subsection (D) inquiry." *Id.*; (citing *In re R.S.-T.*, 522 S.W.3d 92, 108–09 (Tex. App.—San Antonio 2017, no pet.)). In *J.W.*, the supreme court considered the termination of the father's parental rights under subsection (D) and indicated that the mother's use of a controlled substance while pregnant was part of the child's "environment" before the child was born—an environment for which the father may or may not bear responsibility, depending on the circumstances. *Id.*

In this case, the evidence shows that Appellant bore responsibility for A.O.'s environment when he drove while intoxicated with A.O. in the vehicle. Thus, Appellant placed A.O. in a dangerous environment when he allowed her to be a passenger in a vehicle that was being driven by a drunk driver. Furthermore, Appellant acknowledged during his testimony in the case before us that he "put [A.O.] in a position which endangered her well-being on that day." Viewing all of the evidence presented at trial in the light most favorable to the trial court's finding under subsection (D), we hold that a rational trier of fact could have formed a firm belief or conviction that its finding was true. *See J.P.B.*, 180 S.W.3d at 573. Accordingly, we overrule Appellant's first issue to the extent that it relates to the legal sufficiency of the evidence.

With respect to subsection (O), the record shows that Appellant failed to fully comply with the provisions of his court-ordered family service plan. A permanency case manager for the Department testified regarding Appellant's noncompliance, especially his failure to obtain a safe and stable home. Additionally, Appellant acknowledged at trial that he was not fully compliant with his family service plan;

6

he testified that he was compliant "[f]or the most part." Viewing all of the evidence presented at trial in the light most favorable to the trial court's finding under subsection (O), we hold that a rational trier of fact could have formed a firm belief or conviction that its finding was true. *See J.P.B.*, 180 S.W.3d at 573. Accordingly, we overrule Appellant's second issue to the extent that it relates to the legal sufficiency of the evidence.

B. *The evidence is factually insufficient as to best interest.*

In his third issue on appeal, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights would be in the best interest of A.O. *See* FAM. § 161.001(b)(2). There is a "strong presumption" in Texas that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Giving due regard to that presumption, the evidence presented at trial, and the *Holley* factors, we hold, as explained below, that the evidence is legally sufficient, but factually insufficient, to support the trial court's finding that termination of Appellant's parental rights would be in the best interest of A.O. *See Holley*, 544 S.W.2d at 371–72.

With respect to A.O.'s best interest, the evidence shows that, at the time of trial, A.O. wished to be adopted by her friend's parents. A.O. feared the potential for instability and a return to foster care in the future if she were returned to Appellant's care, but she loved Appellant "very much" and wanted to maintain a relationship with him. The friend's parents had a safe, stable home and were in the process of renewing their license to be a foster home so that they could eventually adopt A.O. A.O. had some medical needs, and the friend's parents were able to meet her needs. Although Appellant had stable employment, he did not have stable housing or a valid driver's license. Furthermore, he was still on probation at the time

of trial, and he had endangered A.O. by driving while intoxicated with A.O. in the vehicle.

Viewing the evidence *in the light most favorable to the trial court's best interest finding*, and considering the record as it relates to the desires of the child, the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of those involved, the initial reason for A.O.'s removal from Appellant's care, Appellant's lack of a stable home, and the plans for the child by the parties involved, we hold that a rational trier of fact could have formed a firm belief or conviction that its finding was true. *See id.*; *see also J.P.B.*, 180 S.W.3d at 573. Thus, the evidence is legally sufficient. Accordingly, we overrule Appellant's third issue to the extent that it relates to the legal sufficiency of the evidence.

However, based upon our review of the entire record, *without* viewing the evidence in the light most favorable to the trial court's best interest finding but still giving due deference to that finding, we hold that the trial court could not reasonably have formed a firm belief or conviction that termination of the parent–child relationship between Appellant and A.O. was in A.O.'s best interest. *See Holley*, 544 S.W.2d at 371–72; *see also C.H.*, 89 S.W.3d at 25–26. The trial court itself, when pronouncing his ruling regarding A.O.'s best interest, "recognize[d] the importance of [A.O.'s] continued relationship with [Appellant]." Upon terminating Appellant's parental rights, the trial court stated that it did so "with a hope and a prayer that that relationship, but not an order, that that relationship continue." The trial court's recognition of the importance of the continued relationship between Appellant and A.O. is supported by evidence that Appellant and A.O. had a good relationship, that their visits were appropriate, that they were bonded and loved each other, and that A.O.'s desire from the time of removal until not long before trial was to be returned to Appellant's care.

Appellant had stable employment but earned only minimum wage. Because of Appellant's credit history and his inability to afford his own home or apartment while paying probation-related fees, Appellant lived with a friend. Appellant acknowledged that this living arrangement was not suitable for A.O. because she needed her own room; therefore, he did not request to be appointed as a managing conservator of A.O. Instead, Appellant merely wished to be appointed as a possessory conservator and to be allowed more time to try to obtain stable housing. While stability was shown to be important to A.O. and to be a concern for the trial court when considering A.O.'s best interest, the trial court had the option under the Family Code to severely restrict Appellant's possessory rights, without terminating them, in order to protect A.O.'s best interest. *See In re J.J.R.S.*, 627 S.W.3d 211, 223 (Tex. 2021) (stating that the Family Code "does not require termination when a severe restriction or limitation on access can also be in the best interest of the child while preserving the possibility that the parent and child may continue to have a relationship in the future"). The record shows that A.O.'s friend's parents had indicated that they would not only be willing to adopt A.O., but would also be willing to be a permanent placement for A.O. Based upon our review of the record, we hold that the evidence is factually insufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of A.O. *See Holley*, 544 S.W.2d at 371–72.

While we commend the potential foster/adoptive parents for all that they have done and all that they may continue to do for A.O., we cannot hold in this case that the trial court's finding as to best interest is supported by factually sufficient evidence under the clear and convincing evidentiary standard. Accordingly, we sustain Appellant's third issue on appeal insofar as he challenges the factual sufficiency of the evidence to support the trial court's finding that it would be in A.O.'s best interest to terminate Appellant's parental rights.

C. *Other Matters Not Dispositive of Appeal*

Because we have held that the evidence in this case is factually insufficient to support the finding made by the trial court pursuant to Section 161.001(b)(2), we need not address the factual sufficiency of the evidence with respect to the trial court's findings under Section 161.001(b)(1). *See* TEX. R. APP. P. 47.1. Further, we note that Appellant does not challenge the trial court's appointment of the Department as A.O.'s permanent managing conservator. Accordingly, this court's opinion and judgment are not to be read to alter the trial court's appointment of the Department as the managing conservator of A.O. *See In re J.A.J.*, 243 S.W.3d 611, 615–17 (Tex. 2007) (holding that a parent's appellate challenge to parental termination did not encompass a challenge to the appointment of managing conservator).

IV. *This Court's Ruling*

We reverse the trial court's termination order insofar as it terminated the parental rights of A.O.'s father, and we affirm the order of the trial court in all other respects. We remand this cause to the trial court for further proceedings. Any proceeding on remand must be commenced within 180 days of this court's mandate. TEX. R. APP. P. 28.4(c).

W. BRUCE WILLIAMS
JUSTICE

April 6, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.